# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Kenneth Motley, | ) No. 16 C 6641 |
| Plaintiff, | ) Judge Virginia M. Kendall |
| v. | ) |
| United Airlines, Inc., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kenneth Motley brings this action for damages and injunctive relief against his former employer, Defendant, United Airlines, Inc., ("United") for violations of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 200e, *et seq.* ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); and the Family Medical Leave Act ("FMLA"). (Dkt. 34 at ¶ 1.) Motley also seeks redress for the intentional infliction of emotional distress ("IIED") by United and its agents. (*Id*.)

United moves to dismiss two counts in Motley's Second Amended Complaint. (Dkt. 42.) First, United moves to dismiss the IIED claim because the Illinois Human Rights Act ("IHRA") preempts the claim and United asserts that even if the claim is not preempted, dismissal is appropriate because Motley fails to plausibly state a claim for relief. (Dkt. 42 at 2.) Second, United moves to dismiss the racial harassment claim brought under Title VII because Motley did not provide notice of a harassment claim in his Charge of Discrimination filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). (Dkt. 42 at 2.) United's motion is denied; both counts may proceed.

**FACTUAL ALLEGATIONS**

The Court accepts as true all well-pleaded allegations in the Complaint and draws all reasonable inferences in the non-movant's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Killingsworth v. HSBC Bank,* 507 F.3d 614, 618 (7th Cir. 2007); *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

Motley worked for United from the time he was hired in May 1999, until he was terminated on June 25, 2015. (Dkt. 34 at ¶ 4.) At the time of termination, he worked as a full-time Ramp Service Employee at Chicago O'Hare International Airport. (*Id*. at ¶ 4.) Motley alleges that beginning in February 2015, United began a series of investigations into his alleged misconduct at work. However, United's investigations were not in good faith because Motley's alleged misconduct was not behavior ordinarily subject to investigation; similarly-situated white employees were not subject to investigation when engaging in substantially-similar conduct; United's employees intended to harass Motley; and United's actions were motivated by racial animus. (*Id*. at ¶¶ 26-29, 37-40, 48-51, 70-71.)

*First Investigation*

Sometime during February 2015, Motley's area supervisor and general manager notified Motley that he was under investigation for leaving his work area early. (*Id*. at ¶ 18.) Under United's policies, procedures, and/or common practices, an employee may leave his work area fifteen minutes prior to the end of a work shift. (*Id*. at ¶ 19.) On the day at issue, Motley left work at 12:45 p.m. and his shift ended at 1:00 p.m. (*Id.* at ¶ 15.) His area supervisor and general manager claimed that Motley's work shift ended at 1:15 p.m. and therefore he should not have left until 1:00 p.m. (*Id.* at ¶ 20.) However, Ramp Services Employees work standard shifts: 4:30 a.m. to 1:00 p.m. and 6:00 a.m. to 2:30 p.m. (*Id.* ¶¶ 21-22.) Therefore, under no circumstances

2

could an employee leave work "early" at 1:00 p.m., because there is no standard shift that ends at 1:15 p.m. Motley's 12:45 p.m. departure was not early. (*Id.* at ¶¶ 24-25.)

*Second Investigation*

On another day in February 2015, Motley was wearing headphones during his lunch break when he was approached by his area supervisor. (*Id.* at ¶¶ 30, 32.) Under United's policies, procedures, and/or common practices, employees are permitted to wear headphones during lunch breaks. (*Id*. at ¶ 33.) Motley's supervisor approached Motley and instructed him to remove his headphones. Despite Motley's explanation to his supervisor that he was on his lunch break, United still followed-up with an investigation into Motley's alleged failure to comply with his supervisor's instruction. (*Id*. at ¶¶ 34-36.)

*Third Investigation*

On or about February 22, 2015, Motley's Product Sort Belt Supervisor instructed Motley to throw a number of "hot bags" into the "sorter."[1] (*Id.* at 41.) Motley complied with this direction, but United still investigated the incident and issued a verbal/written warning as discipline. (*Id.* at ¶¶ 43-47.)

*FMLA Request*

Motley requested FMLA "in order to address his fatigue and mental and emotional stress," caused in part by United's "pattern of harassment." (*Id.* at ¶¶ 97-98.) Motley's request was approved and he took leave from February 25, 2015 through March 11, 2015. (*Id*. at ¶¶ 98-99.) Motley alleges that his FMLA leave played a role in United's decision to terminate Motley.

*Termination Proceedings*

Shortly after returning from his FMLA leave, United initiated its final investigation, which Motley marks as the beginning of the termination proceedings. (*Id.* at ¶¶ 100-102.) On

---

[1] Motley does not provide definitions as to what "hot bags" are, or what a "sorter" is.

April 3, 2015, investigators held a meeting with Motley, and informed him that they had contacted law enforcement to report that Motley was carrying a firearm. (*Id.* at ¶¶ 64-65.) The investigators were unable to articulate why they suspected Motley was carrying a weapon. (*Id.* at ¶ 67.) Law enforcement intercepted Motley as he left work that day, searched him in front of the United investigators, and found no firearms or any other weapons on Motley's person. (*Id.* at ¶¶ 68-69.) At the conclusion of this investigation, Motley was terminated.[2] (*Id.* at ¶ 72.) Motley alleges that United's harassment and discrimination resulted in loss of income and other benefits. (*Id*. at ¶ 77.) He alleges that he suffered and continues to suffer emotional distress. (*Id*.)

Motley filed his charge alleging discrimination against United with the Equal Employment Opportunity Commission ("EEOC") on December 28, 2015, and received his Right to Sue Letter on April 4, 2016. (*Id.* at ¶ 6.) Motley then timely filed this action on December 28, 2015. (*Id.*)

## **LEGAL STANDARD**

To survive a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In the complaint, a plaintiff must include "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting *Lang v. TCF Nat'l Bank*, 249 F.App'x. 464, 466 (7th Cir. 2007)). The Court "must accept as true all material allegations of the

---

[2] Motley states that it was at the conclusion of this investigation relating to the firearm accusation that he was terminated; but there is a gap of roughly two and half months before he was terminated on June 29, 2015.

complaint, and must construe the complaint in favor of the complaining party." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quotation omitted).

## DISCUSSION

### I. IHRA Preemption

The IHRA gives the Illinois Human Rights Commission (the "IHRC") exclusive jurisdiction over civil rights violations. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006) (citing 775 ILCS 5/8-111(C)) (stating that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.") However, "where a course of conduct states an independent state law claim, that independent claim is not preempted by the IHRA." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). State law claims are considered independent if they could be established "without reference to legal duties created by the [IHRA]." *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 517, 227 Ill.Dec. 98, 687 N.E.2d 21 (1997); *see also Mendez v. Perla Dental*, 646 F.3d 420, 422 (7th Cir.2011) ("Where the complaint alleges a tort recognized at common law, such that the elements of the tort can be established without reference to the legal duties created by [the IHRA], the state law claim is not preempted by the [IHRA]."); *see also Naeem*, 444 F.3d at 604-605 (the district court had jurisdiction over plaintiff's IIED claim because, "it is clear that her claim rests not just on behavior that is sexually harassing, but rather behavior that would be a tort no matter what the motives of the defendant.")

United contends that Motley's claim for IIED is preempted by the IHRA and that dismissal with prejudice is appropriate because the claim "depends entirely on Defendant's alleged discriminatory conduct and the legal duties furnished by IHRA and [] Plaintiff's IIED claim is inextricably linked to his discrimination claim." (Dkt. 49 at 2.) Motley concedes that

5

United's preemption arguments are "well-taken," but that the IIED count should be dismissed without prejudice to allow for the count to be re-plead. (Dkt. 48 at 1-2.) There is no need for Motley to re-plead. Motley's allegations that United was unwarranted in reporting him to law enforcement for carrying a firearm is alleged conduct that is unrelated to United's legal duties under the IHRA.

In *Swearingen-El v. Cook County Sherrif's Dept.* 416 F. Supp. 2d 612, 615 (N.D. Ill. 2006), defendants falsely accused and reported the plaintiff for a crime the plaintiff did not commit. The court denied a motion to dismiss on the preemption theory because defendants' actions "would be equally punishable even if they were not motivated by discrimination." *Id.* at 618. Similarly, in *Hernandez v. Cook Cty. Sheriff's Office*, 76 F. Supp. 3d 739, 744 (N.D. Ill. 2014), plaintiffs alleged that they were investigated and disciplined due to their political support for a certain candidate, but the employer-defendants argued that their IIED claim was preempted by the IHRA because it was "inextricably linked" to plaintiffs' retaliation claim.[3] *Hernandez*, 76 F. Supp. 3d at 745. The court in *Hernandez* held that the "core" of plaintiffs' theory was not only the retaliation claim, but to seek redress from an unwarranted criminal investigation into the discipline of their conduct at work. "Defendants' conduct did not merely expose [p]laintiffs to the threat of loss of their employment; [p]laintiffs faced the threat of imprisonment as well. Defendants surely knew that the threat of imprisonment would cause Plaintiffs severe emotional distress[.]" *Id.* at 745-746 (citing *Hernandez v. Cook Cty. Sheriff's Office*, No. 07 C 855, 2014 WL 3805734, at *8 (N.D. Ill. July 31, 2014).)

---

[3] The court in *Hernandez* also determined that the IHRA does not cover claims arising under the First Amendment, and therefore plaintiffs' retaliation claims for political affiliation could not be preempted. Here, race, unlike political affiliation, is clearly covered by the IHRA. But, the court in *Hernandez* also held that, "[e]ven if the IHRA protected plaintiffs from retaliation based on their political affiliation, Plaintiffs' claim for intentional infliction of emotional distress is not 'inextricably linked' to their retaliation claim, such that the IHRA divests the Court of jurisdiction over that claim." *Hernandez*, 76 F. Supp. 3d at 744. Thus, the "inextricably linked" analysis still applies to Motley's IIED claim.

To the extent Motley's IIED claim is based on United's conduct in investigating Motley for leaving work early, wearing headphones, or tossing, or not tossing hot bags onto a sorter, the claim is preempted. These incidents do not provide the basis for a claim if they are separated from United's alleged racial discrimination; therefore, the conduct is inextricably linked to Motley's civil rights claim. However, the allegation that United falsely accused him of a crime is different. Motley alleges that United's investigators were unable to articulate a reason for their suspicion, but they nevertheless reported to law enforcement that Motley had a firearm. Law enforcement proceeded to intercept Motley when he was leaving work, searched him, and found nothing. As in *Swearingen-El*, and *Hernandez*, seeking redress for this conduct does not necessarily go to the core of Motley's discrimination claims. Taking the facts in a light most favorable to Motley, the IIED claim is not preempted. *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994) (stating that "[m]atching facts against legal elements comes later").

## II. Failure to State a Claim for IIED

In order to state a cause of action for IIED under Illinois law, a plaintiff must allege: (1) that the defendant's conduct was truly extreme and outrageous; (2) that the defendant either intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) that the defendant's conduct did in fact cause severe emotional distress. *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 269 (Ill. 2003) (citing *McGrath v. Gahey*, 126 Ill.2d 78, 86 (Ill. 1988)). The tort does not extend to "'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath*, 126 Ill.2d at 86, 127 Ill.Dec. 724, 533 N.E.2d 806 (citing Restatement (Second) of Torts § 46 (1965)). "[C]ircumstances surrounding a typical employment dispute usually do not rise to the

level of extreme and outrageous conduct." *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997). However, the Illinois Supreme Court has noted that "cases in which intentional infliction of emotional distress has been sufficiently alleged have in fact very frequently involved a defendant who stood in a position of power or authority relative to the plaintiff." *McGrath*, 126 Ill.2d at 87, 127 (citing *Milton v. Illinois Bell Telephone Co.*, 101 Ill.App.3d 75, 79 (Ill.App.Ct.1981) (addressing employee's claim against employer)).

United asserts that Motley's IIED claim should be dismissed because he fails to allege facts sufficient to establish "extreme" or "outrageous" conduct. But in Illinois, falsely accusing an innocent person of a crime may meet this first element of an IIED claim. *See Wallace v. City of Zion*, No. 11C2859, 2011 WL 3205495, at *6 (N.D.Ill. July 28, 2011) (defendant's false report to police that plaintiff had committed a crime could support IIED claim). If the United investigators had no reason to suspect Motley was carrying a firearm, reporting the crime may rise to "extreme" or "outrageous" conduct. At this early stage, the IIED claim survives.

### III. Title VII Harassment Claim

Title VII makes it unlawful for an employer to "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 200e-2(a)(1). In order to maintain a claim under Title VII, a party must exhaust administrative remedies. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). To exhaust, a party must first file a charge with the EEOC within 300 days of the alleged discriminatory act and then the Commission must issue a right to sue letter. *Id.* The scope of the subsequent judicial proceedings is limited by the nature of the charges filed. *Id.* This ensures that the employer receives notice of the conduct about which the employee is aggrieved and guarantees that the

EEOC and the employer have an opportunity to settle the dispute. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

The Court begins the analysis with the understanding that EEOC charges should be construed liberally because they are completed by laypersons. *Cheek*, 31 F.3d at 500 (citing *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992). A Title VII plaintiff need only set forth claims that are "'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.1976) (en banc) (quoting *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir.1971)), cert. denied, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976).

United asserts that Motley did not allege harassment in his EEOC charge and he is now barred from bringing racial harassment claims in violation of Title VII. (Dkt. 42 at 7.) (citing *Cheek*, 31 F.3d at 500). In Motley's EEOC charge he states that: "[d]uring my employment, I was discharged. I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1965, as amended." Motley's discharge occurred On June 4, 2015. In his Complaint, he alleges that he was harassed based on his race beginning in February 2015. The allegations only span a four-month time frame. The charge put the EEOC on notice to investigate facts during the months leading up to the discharge. Because the "complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge," *Cheek*, 31 F.3d at 500, Motley's harassment claim may proceed.[4]

---

[4] Defendant's citation to *Rush*, 966 F.2d 1104, is unpersuasive. In *Rush*, the Seventh Circuit noted that a stricter standard was appropriate because plaintiff was assisted by her attorney in filling out the EEOC charge. *See Id.* at 1112 ("Any doubt we might have that racial harassment was never brought to the attention of the EEOC is resolved in this case by noting that here, Mrs. Rush apparently was advised by her attorney even at the stage of filing her charge with the EEOC. Therefore, it is not unreasonable to require some additional specificity[.]" Here, Motley was not represented while filling out the charge.

9

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is denied.


Date: 3/8/2017

_____
Virginia M. Kendall, U.S. District Judge